**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ERSKINE BUTTS,<br>Plaintiff, individually, and on behalf of others similarly situated,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br>Defendant. | Case No. 1:18-cv-07922 |

**CLASS ACTION COMPLAINT**

**NOW COMES** Erskine Butts ("Plaintiff"), by and through his attorneys, James C. Vlahakis of Sulaiman Law Group, Ltd., complaining of the Defendant, Portfolio Recovery Associates, LLC ("Defendant," or "PRA") as follows:

**JURISDICTION, PARTIES AND VENUE**

1.      Plaintiff brings this action pursuant to the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227, et seq. and the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. § 1692, et seq.

2.      Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337, as the proposed causes of action arise under the laws of the United States.

3.      Plaintiff is a consumer and natural person over 18-years-of-age.

4.      Plaintiff is a resident of the Northern District of Illinois.

5.      During the time period covered by this civil action, Plaintiff resided in the Northern District of Illinois.

6.      PRA was founded in 1996 and is one of the nation's largest debt collectors.

7.      Defendant PRA is a limited liability company formed under the laws of the State of Delaware.

8.      PRA uses the mail and telephone for the principal purpose of collecting debts from consumers on a nationwide basis, including consumers in the State of Illinois.

9.      Defendant is a "debt collector" as defined by §1692a(6) because it's a business, the principal purpose of which, is the collection of debts and uses the mail and/or the telephones to collect delinquent medical accounts allegedly owed to a third party.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391.

11.     Defendant conducts business in the Northern District of Illinois through its transmission of telephone calls and debt collection letters to persons residing in this District.

12.     A substantial portion of the events or omissions giving rise to the claims occurred within this District as Defendant placed or caused to be placed numerous telephone calls to Plaintiff's cellular telephone which he received and/or heard when he was in this District.

**FACTS SUPPORTING CAUSE OF ACTION**

13.     In or around 2012, Plaintiff obtained a Capital One credit card account.

14.     Plaintiff used his Capital One credit card ("Account") for personal, family and household uses.

15.     Plaintiff was unable to keep up with the minimum payments for his Account.

16.     As a result of failing to keep up with the minimum payments for his Account, Capital One placed Plaintiff's Account in a default status.

17.     Capital One subsequently charged off the Account.

18.     The charged offer Account is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

19.     In or before 2017, PRA acquired the Account.

20.     When PRA acquired the Account, it acquired the Account for less than the amount that Plaintiff owed to Capital One when Capital One charged off the Account.

21.     When PRA acquired the Account, it acquired the Account for less than ten percent of the amount that Plaintiff owed to Capital One when Capital One charged off the Account.

22.     When PRA acquired the Account, it acquired the Account for less than twenty percent of the amount that Plaintiff owed to Capital One when Capital One charged off the Account.

23.     When PRA acquired the Account, it acquired the Account for less than thirty percent of the amount that Plaintiff owed to Capital One when Capital One charged off the Account.

24.     PRA acquired the Account for the purpose of collecting the amount of the Subject Debt.

25.     Defendant is a "debt collector" because it acquired rights to the Account after the Account was in default. 15 U.S.C. §1692a(6).

26.     Plaintiff's cellular phone number is (708) 515-7424 (generally referred to as "cellular telephone number" or "cellular phone").

27.     At all times relevant, Plaintiff was the sole subscriber, owner, possessor, and operator of his cellular telephone number.

28.     Plaintiff paid for his cellular telephone and pays monthly service costs for cellular service.

29.     To the best of Plaintiff's recollection, in or around 2017, Defendant began placing calls to Plaintiff's cellular phone number in an attempt to collect the Account.

30.     When Defendant called Plaintiff's cellular telephone it called from the following telephone numbers: 7604795094; 7033494834; 2409794723; 4692094525; 4794012649; 7025085195; 7574016714; 8165459795; 8656228965; and 4796684930.

31.     Section 227 (b)(1)(A)(iii) of TCPA that that "[i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice[.]"

32.     Section 227 (a)(1)(A)-(B) of the TCPA defines "automatic telephone dialing system" as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

33.     On more than one occasion, Plaintiff answered a phone call from PRA and told PRA to stop calling him.

34.     On more than one occasion, PRA learned that it did not have a consent to call Plaintiff with telephone equipment prohibited by the TCPA.

35.     Thereafter, without Plaintiff's consent, Defendant placed calls to Plaintiff's cellular telephone number using an ATDS as defined by the TCPA in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

36.     PRA's account notes reflect that Plaintiff told PRA to stop calling him.

37. PRA's account notes reflect that Plaintiff told PRA to stop calling him on more than one occasion.

38. Despite Plaintiff PRA to stop calling him, PRA continued to call Plaintiff's cellular phone number.

39. PRA's account notes reflect that PRA continued to call Plaintiff's cellular phone number after Plaintiff told PRA to stop calling him.

40. PRA has left prerecorded messages on Plaintiff's cellular phone number.

41. PRA's account notes reflect that PRA has called and left prerecorded messages on Plaintiff's cellular telephone number.

42. Plaintiff answered no less than 3 calls from Defendant.

43. PRA's account notes reflect that Plaintiff answered no less than 3 calls from Defendant.

44. Plaintiff answered no less than 3 calls from Defendant where he was connected with a live representative.

45. PRA's account notes reflect that Plaintiff answered no less than 3 calls from Defendant where he was connected with a live representative.

46. Notwithstanding Plaintiff's multiple requests that Defendant stop calling, Defendant placed or caused to be placed numerous harassing phone calls to Plaintiff's cellular phone between 2017 and October 2018.

47. Defendant called Plaintiff's cellular phone on October 21, 2018.

48. Defendant called Plaintiff's cellular phone on October 20, 2018.

49. Defendant called Plaintiff's cellular phone on October 19, 2018.

50. Defendant called Plaintiff's cellular phone on October 17, 2018.

51.     Defendant called Plaintiff's cellular phone on October 16, 2018.

52.     Defendant called Plaintiff's cellular phone on October 14, 2018.

53.     Defendant called Plaintiff's cellular phone on October 11, 2018.

54.     Defendant called Plaintiff's cellular phone on October 17, 2018.

55.     Defendant called Plaintiff's cellular phone on October 6, 2018.

56.     Defendant called Plaintiff's cellular phone on October 4, 2018.

57.     Defendant called Plaintiff's cellular phone on October 3, 2018.

58.     Defendant called Plaintiff's cellular phone on October 1, 2018.

59.     Defendant called Plaintiff's cellular phone on September 30, 2018.

60.     Defendant called Plaintiff's cellular phone on September 28, 2018.

61.     When Plaintiff answered a call from PRA, on more than occasion, he was greeted with by a pre-recorded message from PRA.

62.     To the best of Plaintiff's recollection, he was greeted with by a pre-recorded message from PRA after he told PRA stop calling him.

63.     Plaintiff was greeted by a noticeable period of "dead air" while Defendant's telephone system attempted to connect Plaintiff to a live agent.

64.     Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant attempting to collect on the subject debt.

65.     Likewise, Plaintiff also hears what sounds to be call center noise in the background of Defendant's collection calls.

66.     Plaintiff need not allege that the system used to make the call(s) in question had the specific characteristics of an ATDS listed in § 227(a) to survive a motion to dismiss. *See, e.g.,*

*Izsak v. Draftkings, Inc*., 191 F. Supp. 3d 900, 904 (N.D. Ill. 2016) (holding a plaintiff may sufficiently plead a defendant used an ATDS without providing allegations regarding the specific technical details of the alleged ATDS); *Ananthapadmanabhan v. BSI Fin. Servs., Inc.*, 2015 U.S. Dist. LEXIS 167649, 2015 WL 8780579, at *4 (N.D. Ill. Dec. 15, 2015) (same); *Martin v. Direct Wines, Inc*., 2015 U.S. Dist. LEXIS 89015, 2015 WL 4148704, at *2 (N.D. Ill. July 9, 2015) (plausible to alleged call was made with an ATDS after hearing a distinctive "click and pause" after answering a call).

67.    Upon information and belief, based upon PRA's use of pre-recorded messages, dead-air, and delayed answers by live representatives, it is plausible that PRA placed its calls to Plaintiff's cellular telephone using form of automated telephone dialing system and in violation of the TCPA.

68.    Defendant's repeated phone calls have disrupted Plaintiff's daily life and general well-being.

69.    Defendant's repeated phone calls constitute harassment and unfair practices because Defendant continued to call him after he told Defendant to stop calling him.

70.    Defendant's repeated phone calls have caused Plaintiff actual harm in the form of invasion of privacy, nuisance, and intrusion upon seclusion.

71.    Defendant's repeated phone calls have caused Plaintiff actual harm in the form of harassment, emotional distress, anxiety, loss of concentration,

72.    Defendant's repeated phone calls have caused Plaintiff actual harm in the form of diminished value and utility of his telephone equipment and telephone subscription services.

73.    Defendant's repeated phone calls have caused Plaintiff actual harm in the form of using up and/or reducing Plaintiff's voicemail capacity.

74.     Defendant's repeated phone calls have caused Plaintiff actual harm in the form of wear and tear caused to his cellular telephone, the loss of battery charge, the loss of battery life, and the per-kilowatt electricity costs required to recharge his cellular telephone.

75.     Defendant's repeated phone calls have caused Plaintiff actual harm in the form of increased and unauthorized usage of his cellular services.

76.     On information and belief, Plaintiff's claims are not subject to an enforceable arbitration clause.

## CAUSES OF ACTION

### Count I – Violations of the TCPA (Auto-Dialed Calls)

77.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

78.     The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

79.     As set forth in the preceding allegations, Defendant placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using an ATDS in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

80.     Plaintiff contends that Defendant utilized an ATDS as defined by the TCPA

81.     Alternatively, Plaintiff contends that Defendant utilized an ATDS as this terms has been defined by the Federal Communication Commission's 2013 and 2008 Declaratory Rulings to include so-called "predictive dialers".

82.     As alleged above, the telephone and computer equipment used by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

83.     Based on Defendant's lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an ATDS to place calls to Plaintiff's cellular telephone.

84.     Based on the pre-recorded messages Plaintiff heard during some of the phone calls in which Plaintiff answered, as well as the pre-recorded messages left on Plaintiff's voicemail, it is plausible that Defendant placed these aforementioned calls to Plaintiff using pre-recorded voice.

85.     Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular phone between 2017 and the present day, using an ATDS without his prior consent.

86.     Plaintiff did not consent to being called with an ATDS because he told Defendant to stop calling him on more than one occasion.

87.     Defendant cannot claim that Plaintiff consented to being called with an ATDS because Plaintiff told Defendant to stop calling him on more than one occasion.

88.     Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

89.     Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 for each phone call Defendant placed to Plaintiff's cellular telephone number without his consent where Defendant placed the calls with an ATDS as plausibly alleged in the preceding paragraphs.

90.     Defendant's engaged in willful and knowing violations of the TCPA by continuing to call Plaintiff's cellular telephone number with an ATDS without his consent after he told Defendant to stop calling him.

91.     Defendant's conduct in calling Plaintiff's cellular telephone number with an ATDS after he told Defendant to stop calling him results in treble damages pursuant to 47 U.S.C. §227(b)(3)(C).

92.     As set forth above and detailed in Count III, Plaintiff's claims are typical of the claims of other similarly situated persons.

93.     As set forth above and detailed in Count III, Plaintiff's claims and the claims of other similarly situated persons all arise from the same operative facts and are based on the same legal causes of action.

**WHEREFORE**, Plaintiff Erskine Butts respectfully requests that this Honorable Court award the following relief:

a.  Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;

b.  Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);

c.  Awarding Plaintiff compensable costs;

d.  Enjoining Defendant from further contacting Plaintiff in violation of the TCPA; and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

## Count II – Violations of the TCPA (Pre-Recorded Messages)

94.     Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

95.     As set forth in the proceeding paragraphs, Defendant placed or caused to be placed frequent non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone number using prerecorded voice messages without Plaintiff's prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

96.     Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

97.     Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 for each pre-recorded voice message Defendant placed to Plaintiff's cellular telephone number with without his consent.

98.     Defendant's engaged in willful and knowing violations of the TCPA by continuing to call Plaintiff's cellular telephone number with pre-recorded voice messages without his consent after he told Defendant to stop calling him.

99.     Defendant's engaged in willful and knowing violations of the TCPA by leaving pre-recorded voice messages on his cellular telephone's voice mail without his consent after he told Defendant to stop calling him.

100.    Defendant's conduct in leaving pre-recorded voice messages on his cellular telephone's voice mail after he told Defendant to stop calling him results in treble damages pursuant to 47 U.S.C. §227(b)(3)(C).

101.    As set forth above and detailed in Count IV, Plaintiff's claims are typical of the claims of other similarly situated persons.

102.    As set forth above and detailed in Count IV, Plaintiff's claims and the claims of other similarly situated persons all arise from the same operative facts and are based on the same legal causes of action.

**WHEREFORE**, Plaintiff Erskine Butts respectfully requests that this Honorable Court award the following relief:

   a. Declare Defendant's pre-recorded voice messages to Plaintiff to be
      violations of the TCPA;

     b.   Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

     c.   Awarding Plaintiff compensable costs;

     d.   Enjoining Defendant from further contacting Plaintiff in violation of the TCPA; and

     e.   Awarding any other relief as this Honorable Court deems just and appropriate.

### Count III – Class Action  Based Violations of the TCPA (Auto-Dialed Calls)

103.    Plaintiff, on behalf of classes of similarly situated persons, restates and realleges the above paragraphs as though fully set forth herein.

104.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with an ATDS (as defined by the TCPA) without the consent of the person being called.

105.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with an ATDS (as defined by the TCPA) after these persons told Defendant to stop calling them.

106.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with an ATDS (as defined by the FCC's 2003 and 2008 Declaratory Rulings) without the consent of the person being called.

107.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with an ATDS (as defined by the FCC's 2003 and 2008 Declaratory Rulings) after these persons told Defendant to stop calling them.

108.    Defendant's account records can be searched to find incidents where recipients of ATDS based phones calls told Defendant "stop calling".

109.    Defendant's account records can be searched to find incidents where recipients of ATDS based phones calls told Defendant "do not call".

110.    On information and belief, Defendant uses specific alpha/letter based codes to document when call recipients tell Defendant "do not call".

111.    On information and belief, Defendant uses specific numeric based codes to document when call recipients tell Defendant "do not call".

112.    On information and belief, Defendant uses specific alpha/letter based codes to document when call recipients tell Defendant "stop calling".

113.    On information and belief, Defendant uses specific numeric based codes to document when call recipients tell Defendant "stop calling".

114.    On information and belief, Defendant's account records can be searched through the use of designated alpha/letter codes for incidents where call recipients told Defendant "do not call".

115.    On information and belief, Defendant's account records can be searched through the use of designated numeric codes for incidents where call recipients told Defendant "do not call."

116.    On information and belief, Defendant's account records can be searched through the use of designated alpha/letter codes for incidents where call recipients told Defendant "stop calling".

117.    On information and belief, Defendant's account records can be searched through the use of designated numeric codes for incidents where call recipients told Defendant "stop calling".

118.     Defendant's account records reflect more than forty separate incidents where recipients of ATDS based phones calls told Defendant "stop calling".

119.     Defendant's account records reflect more than forty separate incidents where recipients of ATDS based phones calls told Defendant "do not call".

120.     Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to each putative class member for a minimum of $500 for each ATDS based phone call Defendant placed to the cellular telephone numbers on putative class members without their consent.

121.     Defendant's engaged in willful and knowing violations of the TCPA by continuing to call the cellular telephone numbers of putative class members with an ATDS without their consent.

122.     Defendant's conduct in calling the cellular telephone numbers of putative class members with an ATDS after they told Defendant to stop calling results in treble damages pursuant to 47 U.S.C. §227(b)(3)(C).

123.     This Count presents common questions of fact and law.

124.     Common questions predominate over any potential individual issues.

125.     A class action is an appropriate method for the fair and efficient adjudication of claims asserted in this civil action, and superior to other available methods for the fair and efficient adjudication of these claims.

126.     The putative nationwide classes can be defined as follows:

> All persons in the United States who were called on their cellular telephone number by Defendant (or entities on Defendant's behalf) where records demonstrate that the calls were placed by an automatic telephone dialing system.

127.     The putative Illinois-based class can be defined as apply to:

> All persons with Illinois area codes or Illinois addresses who were called on their cellular telephone number by Defendant (or entities on Defendant's

behalf) where records demonstrate that the calls were placed by an automatic telephone dialing system.

128. The putative class members can be identified by data in Defendant's possession and control as well as commercially available databases.

129. As to all of the proposed classes, it is Defendant's burden to demonstrate that call recipients consented to receive pre-recorded voice messages.

130. As alleged above, Defendant's records will objectively demonstrate the absence of consent.

131. Neither Plaintiff nor his counsel has any interests that might cause them not to pursue these claims vigorously.

132. Plaintiff's lead attorney, James C. Vlahakis, is an experienced consumer class action litigator who has defended over a hundred consumer-based claims. Mr. Vlahakis recently was appointed to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99), where his is counsel for two dozen proposed class representatives. Mr. Vlahakis began his litigating consumer class actions in 1998 as a defense attorney and continued to defend individual consumer claims and putative class action through 2017. Mr. Vlahakis has litigated over a hundred consumer-based causes of actions, including, but no limited to dozens of FDCPA based putative class actions. Mr. Vlahakis has also litigated dozens of putative class actions brought pursuant to the Telephone Consumer Protection Act ("TCPA") in both federal and state court. In conjunction with counsel for the class members, Mr. Vlahakis has obtained Court approval of FDCPA and TCPA class class-bases settlements. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE*

15

*Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million fax based settlement). Mr. Vlahakis is familiar with class action litigation as he has litigated and defeated numerous class certification motions. For example, Mr. Vlahakis defeated a TCPA cell phone based proposed class action in *Jamison v. First Credit Services, Inc.* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013). Mr. Vlahakis decertified a putative TCPA cellular phone based class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

133.    Plaintiff's other counsel are highly competent and experienced consumer rights attorneys.

134.    This action should be maintained as a class action because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

**WHEREFORE**, Plaintiff Erskine Butts, on behalf of classes of similarly situated persons, respectfully requests that this Honorable Court award the following relief:

a.   Declare Defendant's phone calls to be violations of the TCPA;

b.   Award putative class members damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);

c.   Awarding compensable costs;

d.   Enjoining Defendant from further contacting putative class members in violation of the TCPA; and

e.   Awarding any other relief as this Honorable Court deems just and appropriate.

## Count IV – Class Action  Based Violations of the TCPA (Pre-Recorded Messages)

135.    Plaintiff, on behalf of classes of similarly situated persons, restates and realleges the above paragraphs as though fully set forth herein.

136.    Defendant's account records can be searched to find incidents where recipients of pre-recorded voice messages told Defendant "stop calling".

137.    Defendant's account records can be searched to find incidents where persons were called with pre-recorded voice messages after these persons told Defendant "stop calling".

138.    Defendant's account records can be searched to find incidents where recipients of pre-recorded voice messages told Defendant "do not call".

139.    Defendant's account records can be searched to find incidents where persons were called with pre-recorded voice messages after these persons told Defendant "do not call".

140.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with pre-recorded voice messages without the consent of the person being called.

141.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with pre-recorded voice messages after these persons told Defendant to stop calling them.

142.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with an pre-recorded voice messages without the consent of the person being called.

143.    Defendant has violated Section 227 (b)(1)(A)(iii) of TCPA by calling more than forty other persons in the State of Illinois with pre-recorded voice messages  after these persons told Defendant to stop calling them.

144. Defendant's account records reflect more than forty separate incidents where recipients of pre-recorded voice messages told Defendant "stop calling".

145. Defendant's account records reflect more than forty separate incidents where recipients of pre-recorded voice messages told Defendant "do not call".

146. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to each putative class member for a minimum of $500 for each pre-recorded voice messages Defendant placed to the cellular telephone numbers on putative class members without their consent.

147. Defendant's engaged in willful and knowing violations of the TCPA by continuing to call the cellular telephone numbers of putative class members with pre-recorded voice messages without their consent.

148. Defendant's conduct in calling the cellular telephone numbers of putative class members with pre-recorded voice messages after they told Defendant to stop calling results in treble damages pursuant to 47 U.S.C. §227(b)(3)(C).

149. Defendant, through its agents, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

150. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable each class member for a minimum of $500 for each pre-recorded voice message Defendant placed to a class member's cellular telephone number with without their consent.

151. Defendant's engaged in willful and knowing violations of the TCPA by continuing to call the cellular telephones of putative class members with pre-recorded voice messages without the class members' consent and after they told Defendant "stop calling" or similar words.

18

152. Defendant's engaged in willful and knowing violations of the TCPA by continuing to call the cellular telephones of putative class members with pre-recorded voice messages without the class members' consent and after they told Defendant "do not call" or similar words.

153. Defendant's conduct in calling the cellular telephone numbers of putative class members with pre-recorded voice messages after they told Defendant to stop calling results in treble damages pursuant to 47 U.S.C. §227(b)(3)(C).

154. This Count presents common questions of fact and law.

155. Common questions predominate over any potential individual issues.

156. A class action is an appropriate method for the fair and efficient adjudication of claims asserted in this civil action, and superior to other available methods for the fair and efficient adjudication of these claims.

157. The putative nationwide classes can be defined as follows:

**Pre-Recorded Greeting Class**

All persons in the United States who were called on their cellular telephone number where records demonstrate that Defendant (or entities on Defendant's behalf) played or attempted to play a pre-recorded voice message when a call was answered.

**Pre-Recorded Voice Mail Class**

All persons in the United States who were called on their cellular telephone number where records demonstrate that Defendant (or entities on Defendant's behalf) left or attempted to leave a pre-recorded voice message on the voicemail associated with recipient's cellular telephone number.

158. The putative Illinois-based classes can be defined as apply to:

**Pre-Recorded Greeting Class**

All persons with Illinois area codes or Illinois addresses who were called on their cellular telephone number where records demonstrate that Defendant (or entities on Defendant's behalf) played or attempted to play a pre-recorded voice message when a call was answered.

**Pre-Recorded Voice Mail Class**

All persons with Illinois area codes or Illinois addresses who were called on their cellular telephone number where records demonstrate that Defendant (or entities on Defendant's behalf) left or attempted to leave a pre-recorded voice message on the voicemail associated with recipient's cellular telephone number.

159.    The putative class members can be identified by data in Defendant's possession and control as well as commercially available databases.

160.    As to all of the proposed classes, it is Defendant's burden to demonstrate that call recipients consented to receive pre-recorded voice messages.

161.    As alleged above, Defendant's records will objectively demonstrate the absence of consent.

162.    Neither Plaintiff nor his counsel has any interests that might cause them not to pursue these claims vigorously.

163.    Plaintiff's lead attorney, James C. Vlahakis, is an experienced consumer class action litigator who has defended over a hundred consumer-based claims.  Mr. Vlahakis recently was appointed to the Steering Committee in a nationwide class action against Apple, Inc., *In Re: Apple Inc. Device Performance Litigation*, 18-md-02827 (N.D. Cal. May 15, 2018) (Dkt. Entry no. 99), where his is counsel for two dozen proposed class representatives. Mr. Vlahakis began his litigating consumer class actions in 1998 as a defense attorney and continued to defend individual consumer claims and putative class action through 2017.  Mr. Vlahakis has litigated over a hundred consumer-based causes of actions, including, but no limited to dozens of FDCPA based putative class actions.  Mr. Vlahakis has also litigated dozens of putative class actions brought pursuant to the Telephone Consumer Protection Act ("TCPA") in both federal and state court. In conjunction with counsel for the class members, Mr. Vlahakis has obtained Court approval of FDCPA and TCPA class class-bases settlements.  *See, e.g., In Re Capital One Telephone Consumer Protection*

*Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar ATDS based settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar ATDS wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc*. (N.D. Ill.) ($3.5 million fax based settlement). Mr. Vlahakis is familiar with class action litigation as he has litigated and defeated numerous class certification motions. For example, Mr. Vlahakis defeated a TCPA cell phone based proposed class action in *Jamison v. First Credit Services, Inc.* 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013). Mr. Vlahakis decertified a putative TCPA cellular phone based class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

164.    Plaintiff's other counsel are highly competent and experienced consumer rights attorneys.

165.    This action should be maintained as a class action because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

**WHEREFORE**, Plaintiff Erskine Butts, on behalf of classes of similarly situated persons, respectfully requests that this Honorable Court award the following relief:

a.  Declare Defendant's pre-recorded voice messages to Plaintiff to be violations of the TCPA;

b.  Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

c.  Awarding Plaintiff compensable costs;

d.  Enjoining Defendant from further contacting Plaintiff in violation of the TCPA; and

e.  Awarding any other relief as this Honorable Court deems just and appropriate.

## Count V – Violations of the FDCPA (Individual Capacity)

166. Plaintiff restates and realleges the above paragraphs as though fully set forth herein.

167. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

168. Through the acquisition of Plaintiff's Account, Defendant has access to records identifying products and/or services purchased through Plaintiff's Capital One credit card.

169. Accordingly, Defendant has knowledge sufficient to admit or deny whether Plaintiff is a consumer as defined by the FDCPA.

170. Defendant used the phone to attempt to collect the subject debt and, as such, engaged in "communications" as defined in FDCPA §1692a(2).

171. Defendant's communications to Plaintiff were made in connection with the collection of the subject debt.

172. Defendant violated 15 U.S.C. §§1692c(a)(1), d, and d(5) through its unlawful debt collection practices.

### a. Violations of FDCPA § 1692c

173. Defendant violated §1692c(a)(1) when it continuously called Plaintiff after being notified to stop calling his cellular phone.

174. Defendant's continued called to Plaintiff's cellular phone after he demanded that it cease contacting him constitutes harassing and abusive conduct.

175. Because Defendant continued to call Plaintiff's cellular phone after Plaintiff told Defendant to stop calling, Defendant's calls constituted an oppressive and abusive method of debt collection.

176. Despite being told to stop calling, Defendant continued to call Plaintiff's cellular phone.

177.    By continuing to call Plaintiff after being told to stop calling him, Defendant knew that its conduct was inconvenient and harassing to him.

### b.  Violations of  FDCPA § 1692d

178.    Defendant violated §1692d by engaging in abusive, harassing, and oppressive conduct by relentlessly calling Plaintiff's cellular phone seeking immediate payment on the subject debt. Moreover, Defendant continued placing the relentless calls after Plaintiff advised Defendant to cease placing collection calls to his cellular phone.

179.    Defendant violated §1692d(5) by causing Plaintiff's cellular phone to ring repeatedly and continuously in an attempt to engage Plaintiff in conversations regarding the collection of the subject debt with the intent to annoy, abuse, or harass Plaintiff.

180.    Specifically, Defendant placed or caused to be placed multiple phone calls to Plaintiff's cellular phone even after Plaintiff requested it stop calling him.

181.    "[W]here a plaintiff has shown that he asked the collection agency to stop calling or has informed the collection agency that it has the wrong number, and the collection agency nevertheless continued to call the plaintiff, courts have found intent." *Hendricks v. CBE Group, Inc.*, 891 F. Supp. 2d 892, 896 (N.D. Ill. 2012) (collecting cases).

182.    As pled above, Plaintiff was harmed by Defendant's conduct.

183.    As an experienced debt collector, Defendant knew or should have known the ramifications of placing debt collection calls to Plaintiff after it was informed to cease placing such calls.

184.    Upon information and belief, Defendant systematically places unsolicited and harassing debt collection calls to consumers in Illinois in order to aggressively collect debts in default to increase its profitability at the consumers' expense.

185.    Upon information and belief, Defendant has no system in place to document and archive valid revocation of consent by consumers.

**WHEREFORE**, Plaintiff Erskine Butts respectfully requests that this Honorable Court:

    a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.  Award Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

    c.  Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

    d.  Award any other relief as the Honorable Court deems just and proper.

**Plaintiff demands trial by jury.**

**Dated: 11/30/2018**

Respectfully Submitted,

*Counsel for Plaintiff and the putative class*

/s/ *James C. Vlahakis*
James C. Vlahakis
Omar T. Sulaiman,
Marwan R. Daher
Alexander J. Taylor
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
jvlahakis@sulaimanlaw.com
osulaiman@sulaimanlaw.com
mdaher@sulaimanlaw.com
ataylor@sulaimanlaw.com